No. 23-3125

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
_____

JEFFERY P. RHOADS, M.D.,

Plaintiff-Appellant,

vs.

STORMONT-VAIL HEALTHCARE, INC.,

Defendant-Appellee
_____

Appeal from the United States District Court
for the District of Kansas

The Honorable John W. Brooms
District Court No. 22-4005-JWB
_____

APPELLANT'S REPLY BRIEF
_____

ALAN V. JOHNSON, KS. #9992
SLOAN, EISENBARTH, GLASSMAN,
 McENTIRE & JARBOE, L.L.C.
534 S. Kansas Avenue, Suite 1000
TOPEKA, KS  66603
PHONE:    785/357-6311
FAX:        785/357-0152
ATTORNEY FOR APPELLANT

# TABLE OF CONTENTS

**STATEMENT OF THE CASE** ............................................................................. 1

    Smith v. Midland Brake, Inc.,
    180 F.3d 1154 (10th Cir. 1999) ................................................................. 3

**ARGUMENTS AND AUTHORITIES** ................................................................ 4

I.    DR. RHOADS' REQUEST FOR REASSIGNMENT TO A
    POSITION PROVIDING OUTPATIENT CARE ........................... 4

    A.    Dr. Rhoads' Cooperation In
          The Interactive Process ................................................................ 4

    Reasonable Accommodation And Undue Hardship
    Under The Americans With Disabilities Act,
    2002 WL 31994335 at *8 (2002) ............................................................. 5

    Disability-Related Inquiries And Medical Examinations
    Of Employees Under The Americans With Disabilities Act,
    2000 WL 33407181 at *10 (2000) ........................................................... 6

    B.    The Reasonableness Of Stormont's Belief That
          Dr. Rhoads Posed A Direct Threat
          To Patient Safety ......................................................................... 8

    Jarvis v. Potter,
    500 F.3d 113 (10th Cir. 2007) ............................................................ 9, 10

    Herrmann v. Salt Lake City Corp.,
    21 F.4th 666, 674 (10th Cir. 2021) ...................................................10, 11

    C.    The Reasonableness Of Dr. Rhoads' Proposed
          Accommodation ......................................................................... 10

    Aubrey v. Koppes,
    975 F.3d 995, 1005 (10th Cir. 2020) .................................................11, 15

I.  **DR. RHOADS' REQUEST FOR REASSIGNMENT TO A ADMINISTRATIVE POSITION** ................................................. 12

    A.  **Dr. Rhoads' Alleged Abandonment Of His Request For An Administrative Position** .................................. 12

    VDARE Foundation v. City of Colorado Springs, 11 F.4th 1151, 1169 (10th Cir. 2021) ........................................ 13

    Sauder v. Dittmar, 118 F.2d 524, 530 (10th Cir. 1941) ........................................... 13

    B.  **Dr. Rhoads Qualifications For Available Administrative Positions** ................................................ 14

    Valdez v. McGill, 62 F. Appx., 814, 819 n.5 (10th Cir. 2012) ................................ 15

**CONCLUSION** ................................................................ 15

**CERTIFICATE OF COMPLIANCE WITH RULE 32** .......................... 16

**CERTIFICATE OF DIGITAL SUBMISSION** ...................................... 16

**CERTIFICATE OF SERVICE** ............................................................ 17

# **STATEMENT OF THE CASE**

In the statement of facts in its response brief, the defendant-appellee, Stormont-Vail Healthcare, Inc., ("Stormont"), fails to view the record in the light most favorable to the plaintiff-appellant, Dr. Jeffery P. Roads. This is the same error which the district court made. For example, Stormont states the following:

> Rhoads never applied for outpatient physician privileges because he was afraid that he would be denied, be reported to the Board of Healing Arts, and be in worse shape than he already was. (App. Vol. I at 206, 243)

(Aplee. Response Br. p. at 7)

This statement is controverted by the letter dated June 23, 2021, from Dr. Rhoads' attorney to Stormont's attorney, which says:

> Dr. Rhoads understands that <u>if he is offered reassignment</u> to a position as a provider of outpatient primary care, he would have to apply to Stormont Vail's Credentials Committee for clinical privileges consistent with outpatient/primary care. Dr. Rhoads is quite willing to apply for such privileges, and he believes that the Credentials Committee will grant his request for such privileges.

(Aplt. App. at 331)

Another statement of fact by Stormont which fails to view the record in the light most favorable to Dr. Rhoads relates to Dr. Soni Mathew's meeting

1

with Dr. Rhoads on May 20, 2021. Relying on Dr. Mathew's progress notes, Stormont states:

> Dr. Mathew recommended that Acumen review Dr. Townley's recent notes and confer with Dr. Townley, to formulate a plan for Rhoads' return to work. (Supp. App. at 16) <u>Rhoads initially agreed to a re-evaluation by Acumen</u>, and Acumen agreed to schedule a follow up with Rhoads after he signed a release of information. (Supp. App. at 13, 16)

(Aplee. Response Br. at pp. 9-10. Emphasis added.)

This statement is controverted by a text message which Dr. Rhoads sent to Dr. Kevin Dishman on May 20, 2021, saying in relevant part:

> Dr. Mathew stated that he will recommend to SMV that I be reevaluated by KU and Acumen and that I execute a release between the 2 parties so that they can coordinate care…. Dr. Mathew wants to punt this back to where we were a few months ago. <u>This cannot continue</u>.

(Aplt. App. at 317-318. Emphasis added. See also Aplt. App. at 461)

Another statement of fact by Stormont which fails to view the record in the light most favorable to Dr. Rhoads is the following:

> However, Dr. Townley, KU, and Acumen's records up to May 2021 <u>lacked specifics as to Rhoads' limitations and a specific plan</u> that would in all practicality allow Dishman to determine that Stormont could employ Rhoads while maintaining patient safety. (App. Vol. 2 at 302-304)

(Aplee. Response Br. at p. 11. Emphasis added.)

2

This statement is controverted by Dr. Dishman's admission in his deposition that during 2021, he did not personally review any evaluations of Dr. Rhoads by Acumen. (See Aplt. Opening Br. at p. 17) In addition, Dr. Dishman told Dr. Rhoads during their telephone conversation on May 21, 2021, that "I have not read your records, and <u>I am not going to read your records</u>." (See Aplt. Opening Br. at p. 16. Emphasis added.) Because Dr. Dishman (the decision-maker) never reviewed any of Dr. Rhoads' medical records, a reasonable jury could find unworthy of belief Dr. Dishman's explanation that the medical records "lacked specifics as to Rhoads' limitations and a specific plan."

Another statement of fact by Stormont which fails to review the record in the light most favorable to Dr. Rhoads is that "Rhoads did not apply for any administrative positions." (Aplee. Response Br. at p. 13) This fact is immaterial because the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA") do not require a disabled employee to "apply for" any vacant position. As this court <u>en banc</u> held in <u>Smith v. Midland Brake, Inc.</u>, 180 F.3d 1154 (10th Cir. 1999):

> The separate concurrence and dissent of Judge Kelly suggests that the reassignment duty imposed by the ADA is no more than a duty merely to consider without discrimination a disabled employee's <u>request for reassignment</u> along with all other <u>applications</u> the employer may receive from other employees or job

3

> applicants for a vacant position. <u>We reject this narrow definition of reassignment</u>, both because it does violence to the literal meaning of the word assignment and because it would render the reassignment language in 42 U.S.C. § 12111 (9) a nullity.

180 F.3d at 1164. Emphasis added.

## ARGUMENTS AND AUTHORITIES

In its response brief, Stormont also raises several legal arguments which require a reply from Dr. Rhoads. These arguments relate to one or the other of the two requests for accommodation made by Dr. Rhoads: (1) reassignment to a position providing outpatient care; and (2) reassignment to an administrative position.

### I. DR. RHOADS' REQUEST FOR REASSIGNMENT TO A POSITION PROVIDING OUTPATIENT CARE

#### A. Dr. Rhoads' Cooperation In The Interactive Process

In regard to Dr. Rhoads' request for reassignment to a position providing outpatient care, Stormont initially contends that Dr. Rhoads failed to cooperate in the interactive process in good faith. Specifically, Stormont contends that Dr. Rhoads refused to obtain an updated diagnostic impression. (Aplee. Response Br. at pp. 21-25) Stormont asserts:

> …Dishman agreed with Dr. Mathew's recommendation to obtain an updated evaluation from Acumen, the expert in the area, so they could 'develop a specific practical plan' for how to proceed.

4

> Around May 21, 2021, Dishman offered Rhoads two weeks of pay to complete the evaluation and work with Dishman to develop a practical solution. Rhoads declined Dishman's offer and refused to obtain the updated evaluation.

(Aplee. Response Br. at p. 22. Record citations omitted.)

Stormont's contention must be rejected because Stormont was not entitled, under the ADA or the RA, to request an additional medical evaluation of Dr. Rhoads on May 21, 2021. This is so because the medical evaluations provided by Dr. Rhoads to Stormont prior to May 21, 2021, were sufficient. The starting point for reaching this conclusion is the EEOC Enforcement Guidance entitled, "Reasonable Accommodation And Undue Hardship Under The Americans with Disabilities Act," which states in relevant part:

> 8.   Are there situations in which an employer cannot ask for documentation in response to a request for reasonable accommodation?
>
> Yes. An employer cannot ask for documentation when: (1) both the disability and the need for accommodation are obvious, or (2) the individual has <u>already provided the employer with sufficient information</u> to substantiate that s/he has an ADA disability and needs the reasonable accommodation requested.

2002 WL 31994335 at *8 (2002). Emphasis added.

5

What constitutes "sufficient" medical information is further defined in the EEOC Enforcement Guidance entitled, "Disability-Related Inquiries And Medical Examinations Of Employees Under The Americans With Disabilities Act," which states in relevant part:

> 10. What documentation may an employer require from an employee who requests a reasonable accommodation?
>
> An employer may require an employee to provide documentation that is sufficient to substantiate that s/he has an ADA disability and needs the reasonable accommodation requested, but cannot ask for unrelated documentation….
>
> <u>Documentation is sufficient if it</u>: (1) describes the nature, severity, and duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed.

2000 WL 33407181 at *10 (2000). Emphasis added.

When these EEOC Enforcement Guidances are applied to the facts here, a reasonable jury could find that the medical evaluations provided by Dr. Rhoads to Stormont prior to May 21, 2021, were "sufficient," and therefore Stormont was not entitled to request an additional medical evaluation on May 21, 2021.

The medical evaluations provided by Dr. Rhoads to Stormont prior to May 21, 2021, included Acumen's final evaluation dated April 13, 2021. (Aplt. App. at 477-478) Acumen's evaluation recommended a "return to work in a supervised outpatient clinical position where his documentation and clinical decision making can be reviewed by a physician colleague working in the same setting and he can be observed through the workday by a defined group of co-workers/nurses." (Aplt. App. at 478)

The medical evaluations provided by Dr. Rhoads to Stormont prior to May 21, 2021, also included Dr. Townley's progress note dated April 14, 2021, which summarized his telephone conversation with Dr. Brey. Dr. Townley's progress note recommended "a return to outpatient medicine with oversight/accommodations…[e]ither working closely with a nurse/practitioner/PA and/or someone overseeing documentation/treatment plans to make sure he is performing well…." (Aplt. App. at 479)

The medical evaluations provided by Dr. Rhoads to Stormont prior to May 21, 2021, also included the diagnosis prepared by Lindsey Gillen, ARPN-NP, on May 10, 2021. (Aplt. App. at 333-339) Ms. Gillen recommended a "return to work with an average workday of approx. 8 hrs. per day, no more than 5 days per week. A process of evaluation should be in place to follow and evaluate his work performance." (Aplt. App. at 338)

Based on the above evidence, a reasonable jury could find that the medical evaluations provided by Dr. Rhoads to Stormont prior to May 21, 2021, were "sufficient" under the EEOC Enforcement Guidance, and therefore Stormont was not entitled to request an additional medical evaluation on May 21, 2021. A reasonable jury could further find that Dr. Rhoads cooperated in the interactive process in good faith.

### B. The Reasonableness Of Stormont's Belief That Dr. Rhoads Posed A Direct Threat To Patient Safety

Stormont next contends that it reasonably believed that Dr. Rhoads posed a direct threat to patient safety, which could not be eliminated by reasonable accommodation. (Aplee. Response Br. at pp. 28-34) Specifically, Stormont asserts:

> …Stormont was justified in determining that Rhoads posed a direct threat to patient safety in any physician position and that nothing required it to risk patient safety by reassigning Rhoads to an outpatient physician position. The uncontroverted facts established that Dishman had a legitimate and reasonable concern about patient safety based upon Rhoads' confirmed neurocognitive impairment and suspected Levy body dementia, which was later confirmed.

(Aplee. Response Br. at p. 31)

Stormont's contention is not persuasive for several reasons. First, the determination that an individual poses a "direct threat" must be based on an

8

individualized assessment, taking into consideration the most current medical knowledge. As this court explained in <u>Jarvis v. Potter</u>, 500 F.3d 113 (10th Cir. 2007):

> 'The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on <u>the most current medical knowledge</u> and/or on the best available objective evidence.'

500 F.3d at 1121-1122. Emphasis added.

Here, "the most current medical knowledge" regarding Dr. Rhoads was APRN Gillen's evaluation of him on May 10, 2021. (Aplt. App. at 333-339) In her diagnosis, Ms. Gillen emphasized:

> Though he continues to have some very mild motor symptoms, as previous evaluations at neuropsychology testing at this facility have stated, he does **NOT** meet the criteria for dementia.

(Aplt. App. at 338. Emphasis in original.)

Second, Dr. Dishman admitted in his deposition that he did not personally review any evaluations of Dr. Rhoads by Acumen during 2021. (Aplt. App. at 455) In light of this admission, a reasonably jury could find that Dr. Dishman's belief that Dr. Rhoads posed a direct threat to patient safety

9

was not based on the most current medical knowledge, but rather on "predetermined or unfounded general stereotypes." Jarvis, 500 F.3d at 1123.

In summary, for the reasons discussed above and in Dr. Rhoads' Opening Brief (pp. 31-34), this court must conclude that Stormont did not "conclusively" rebut the element of Dr. Rhoads' prima facie case relating to Stormont's direct-threat contention. Herrmann v. Salt Lake City Corp., 21 F.4th 666, 674 (10th Cir. 2021). In other words, Dr. Rhoads has presented sufficient evidence to raise a disputed factual issue regarding the reasonableness of Dr. Dishman's belief that Dr. Rhoads posed a direct threat to patient safety.

### C. The Reasonableness Of Dr. Rhoads' Proposed Accommodation

Stormont also contends that Dr. Rhoads' proposed accommodation to be reassigned to outpatient care is not reasonable. (Aplee. Response Br. at pp. 35-40) Specifically, Stormont argues:

> Second, Rhoads' proposed accommodations would relieve him of the essential duties of a physician. A physician must be able to independently exercise professional judgment regarding the care and treatment of patients, accurately document patient medical history and treatment plans, and perform administrative tasks. Rhoads' request relieved him of these essential duties and pawns them off to another employee.

10

(Aplee. Response Br. at p. 37. Record citations omitted. Emphasis in original.)

Stormont's argument fails for several reasons. First, establishing a prima facie case for a failure-to-accommodate claim "is not onerous." Aubrey v. Koppes, 975 F.3d 995, 1005 (10th Cir. 2020). The plaintiff only needs to show "a plausibly reasonable accommodation." 975 F.3d at 1006.

Second, when the record is viewed in the light most favorable to Dr. Rhoads, his proposed accommodation would not "relieve him of the essential duties of a physician," and "pawn them off to another employee." (Aplee. Response Br. at p. 37) Rather, in the words of Acumen, Dr. Rhoads would "return to work in a supervised outpatient clinical position where his documentation and clinical decision making can be <u>reviewed</u> by a physician colleague working in the same setting and he can be <u>observed</u> throughout the workday by a defined group of co-worker/nurses." (Aplt. App. at 478. Emphasis added.)

Dr. Rhoads testified that his proposed accommodation would simply "mean that Stormont's proctoring process would be reinitiated." (Aplt. App. at 461) Dr. Kimberly Brey, the then-President of Stormont's Medical Staff, testified that if a problem comes up with a physician who has privileges at Stormont, one option "is to reinitiate a proctoring session. It is called a Focus

11

Physician Practice Evaluation or FPPE." (Aplt. App. at 468) Dr. Brey further testified that she believed this option has been used with Dr. Baraban, after he had had a long hospital stay. (Aplt. App. at 469)

In summary, for the reasons discussed above and in Dr. Rhoads' Opening Brief (pp. 33-34), this court must again conclude that Stormont did not "<u>conclusively</u>" rebut the element of Dr. Rhoads' prima facie case relating to the reasonableness of his proposed accommodation. <u>Herrmann</u>, 21 F.4th at 674. Emphasis added. In other words, Dr. Rhoads has presented sufficient evidence to raise a disputed factual issue regarding the reasonableness of his proposed accommodation to be reassigned to outpatient care.

## II. DR. RHOADS' REQUEST FOR REASSIGNMENT TO AN ADMINISTRATIVE POSITION

### A. Dr. Rhoads' Alleged Abandonment Of His Request For An Administrative Position

In regard to Dr. Rhoads' request for reassignment to an administrative position, which did not require direct patient care, Stormont first argues that Dr. Rhoads abandoned this request during the interactive process. (Aplee. Response Br. at pp. 43-46) Specifically, Stormont asserts:

> There is no evidence that Rhoads pursued an administrative position during mediation, especially when he rejected Stormont's offer of a nonphysician position at the mediation.

(Aplee. Response Br. at pp. 45-46)

Stormont's argument must be rejected because Darlene Stone testified that during the mediation session on September 15, 2021, the parties specifically discussed non-physician positions, saying:

> <u>I recall him stating he wanted another employment opportunity that he could do.</u> We did discuss or share with him that there were other positions he could do as a non-physician.

(Aplt. App. at 475. Emphasis added.)

Abandonment of a known right "comes about when a party deliberately considers an issue and makes an intentional decision to forego it." <u>VDARE Foundation v. City of Colorado Springs</u>, 11 F.4th 1151, 1169 (10th Cir. 2021). And "where acts and conduct are relied upon to constitute abandonment, they must be positive, unequivocal, and inconsistent with an intent to be further bound…." <u>Sauder v. Dittmar</u>, 118 F.2d 524, 530 (10th Cir. 1941)

In light of Ms. Stones' testimony, a reasonable jury could find that Dr. Rhoads did not deliberately and unequivocally forego his request for reassignment to an administrative position. In other words, this court must once again conclude that Stormont did not "<u>conclusively</u>" establish its affirmative defense of abandonment. <u>Herrmann</u>, 21 4th at 674. Emphasis added.

### B. Dr. Rhoads' Qualifications For Available Administrative Positions

Stormont further argues that Dr. Rhoads was not qualified for the multiple administrative positions which were vacant between April and October of 2021. (Aplee. Response Br. at pp. 46-48) Specifically, Stormont contends:

> … Rhoads also cannot show there was ever a vacant administrative position at Stormont <u>for which he was qualified</u>. It is Rhoads' burden to present evidence of his qualifications, and he cannot rely on speculation, conjecture, or surmise.

(Aplee. Response Br. at pp. 46-47. Emphasis in original.)

Stormont's contention must be rejected because, in response to Stormont's summary judgment motion, Dr. Rhoads presented evidence that there were ten administrative positions at Stormont which were vacant between April and October of 2021. (See. Aplt. Opening Br. at pp. 41-42) Dr. Rhoads also presented his resume, which sets forth his education, training, and experience. (Aplt. App. at 340-341) Dr. Rhoads had previously sent his resume to Stormont on June 23, 2021. (Aplt. App. at 330-331)

Dr. Rhoads further presented his sworn declaration, stating that based on his education, training, and experience, he was qualified for all ten of the administrative positions which were vacant between April and October of

2021. Dr. Rhoads also testified that Stormont did not offer him any of these ten administrative positions. (Aplt. App. at 423, 462-463)

However, in response, Stormont did not come forward with <u>any</u> evidence relating to the qualifications for the ten administrative positions which were vacant between April and October of 2021. In addition, Stormont did not dispute that it did not offer Dr. Rhoads any of these administrative positions, or even discuss any of these positions with him. (Aplt. App. at 485-486) Consequently, what this court said in <u>Aubrey</u> applies here:

> We note… that 'an employer's failure to engage in the interactive process will often make it difficult to resolve a case for the employer on summary judgment'…. That is because, 'when the employer fails to engage in the interactive process, it is not likely that an employer will be able to establish on summary judgment the absence of a disputed fact as to the existence of a reasonable accommodation.'

975 F.3d at 1010, quoting <u>Valdez v. McGill</u>, 462 F. Appx., 814, 819 n.5 (10th Cir. 2012)

## **CONCLUSION**

For the reasons discussed above and in Dr. Rhoads' Opening Brief, the district court erroneously granted summary judgment in favor of Stormont on Dr. Rhoads' failure-to-accommodate claim. Accordingly, the summary judgment in favor of Stormont must be reversed, and the case remanded to the district court for a trial on the merits.

## CERTIFICATE OF COMPLIANCE WITH RULE 32

Pursuant to Fed. R. App. Pro. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 3,676 words. I relied on my word processor to obtain this count, and it is Microsoft Word Office 365.

## CERTIFICATE OF DIGITAL SUBMISSION

No privacy redactions were necessary in this document. The document submitted in digital form is an exact copy of the written document filed with the Clerk. The document is a native PDF document. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Symantec Endpoint Protection - Antivirus and Antispyware Protection Program, most recently updated November 9, 2023, and, according to the program, is free of viruses.

  s/Alan V. Johnson
Alan V. Johnson, KS #9992
Sloan, Eisenbarth, Glassman,
 McEntire & Jarboe, L.L.C.
534 s. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone (785) 357-6311
Fax      (785) 357-0152
ajohnson@sloanlawfirm.com
ATTORNEY FOR APPELLANT

## **CERTIFICATE OF SERVICE**

I herby certify that on the **9th day of November 2023**, I delivered a copy of the foregoing document via ECF and electronic mail to the following parties:

**GOODELL STRATTON EDMONDS
& PALMER LLP**
Susan L. Mauch, #15295
Cameron S. Bernard, #28228
515 South Kansas Ave.
Topeka, KS 66603
Phone:    (785) 233-0593
Facsimile: (785) 233-8870
slmauch@gseplaw.com
cbernard@gseplaw.com
**ATTORNEYS FOR DEFENDANT**

    /s/Alan V. Johnson
Alan V. Johnson, KS #9992
ajohnson@sloanlawfirm.com